## MIDLAND PROPERTY PARTNERS, LLC, Respondent,

v.

## Richard WATKINS, Appellant.

## No. WD 76027.

Missouri Court of Appeals, Western District.

Nov. 5, 2013.

---

Ryan L. White, for Respondent.

John M. Duggan, for Appellant.

Before Division Two: MARK D. PFEIFFER, Presiding Judge, JOSEPH M. ELLIS, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Richard C. Watkins appeals from a judgment entered by the Circuit Court of Jackson County in favor of Midland Property Partners, LLC, Gary Jenkins, the Mark Horstmann Revocable Trust, and the Betty Horstmann Revocable Trust (collectively, "Respondents"). This litigation arose after Respondents each filed suit against Appellant for breach of promissory note. For the following reasons, the judgment is affirmed in part and reversed in part.

In 2006, Appellant and Respondents organized and became members of a limited liability company, MCI Partners, LLC ("MCI"). MCI was created to develop and manage commercial real estate in the Kansas City area. Appellant had a 30% ownership interest in MCI and acted as the company's sole manager from 2006 to 2009.

In 2009, additional capital was necessary for MCI's continued operation. Given his 30% ownership interest, Appellant was required to make a deferred capital contribution of $79,500.00 to the company. Appellant was unable to pay the required deferred capital contribution. Thus, on January 19, 2009, Appellant drafted, executed, and delivered four promissory notes ("the Notes") in exchange for Respondents agreeing to advance his share of the deferred capital contribution to MCI. Each of the four Notes was made payable to one of Respondents. The Notes collectively total $79,500.00.[1]

Each Note provides that Appellant promises to pay the principal sum of the respective Note in full by January 19, 2010, with interest accruing at a rate of 7.25%. The Notes further provide that, upon default, Appellant must pay "all reasonable costs incurred by [Respondents] in collecting or enforcing payment [of the Notes]."

In addition to the Notes, Appellant also executed and delivered four corresponding continuing limited guaranties ("the Guaranties") to Respondents. Each Guaranty identifies Appellant as the guarantor and provides that Appellant agrees to pay the Notes he executed on January 19, 2009. The Guaranties also contain the following jury-waiver provision:

---

1. Two of the Notes were made payable in the amount of $26,500 each. The other two Notes were made payable in the amount of $13,250.00 each.

TO THE EXTENT PERMITTED BY APPLICABLE LAW, AND AC-KNOWLEDGING THAT THE CONSEQUENCES OF SAID WAIVER ARE FULLY UNDERSTOOD, GUARANTOR HEREBY EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INSTITUTED AGAINST GUARANTOR OR ANY OTHER PERSON LIABLE ON THE NOTE.

The Guaranties further provide that Respondents were "expressly relying upon [the Guaranties] in extending credit to [Appellant]" and that Respondents accepted the Guaranties as "material inducement to the extension of credit to [Appellant]."

Appellant failed to make any payments under the four Notes by January 19, 2010. Each Respondent subsequently sent Appellant a demand letter seeking payment of their respective Note. When Appellant again failed to make any payments under the Notes, Respondents filed petitions against Appellant alleging breach of the promissory notes and requesting attorneys' fees.[2]

Appellant denied the allegations made in Respondents' petitions and asserted several counterclaims. The counterclaims pertained to Respondents' alleged violations of MCI's Operating Agreement ("the Operating Agreement"). In particular, Appellant alleged that Respondents breached the Operating Agreement by not following the procedures setout therein for removing him as manager, adding additional managers, conducting meetings, purchasing his ownership interest, and borrowing money from the bank. Appellant also pleaded set-off as an affirmative defense. His request for a set-off stemmed from his belief that any judgment against him should be offset by the amount of money Respondents allegedly failed to pay him when they purchased his ownership interest in MCI without complying with procedures outlined in the Operating Agreement.[3]

Prior to trial, the circuit court dismissed Appellant's counterclaims on the basis that such claims must be arbitrated in light of the Operating Agreement's arbitration provision. The circuit court also granted Respondents' motion to strike Appellant's demand for a jury trial based upon the jury-waiver provisions in the Guaranties.

On June 26, 2012, a bench trial commenced at which Appellant and all four Respondents testified.[4] During the trial, Appellant moved to dismiss the case on the basis that Respondents failed to produce or prove that they had possession of the original Notes and, thus, could not prove that they were holders of the Notes. The circuit court took the matter under advisement. Each Respondent later testified that Appellant executed the Notes and that the original Notes were, at one time, in their possession. The Respondents further testified that although they did not know where the original Notes were, they had not transferred their respective interests in the Notes. When called as rebuttal witnesses, Respondents testified, over Appellant's objection, that they could not lo-

---

**2.** The circuit court consolidated Respondents' cases against Appellant at the request of the parties.

**3.** Later in 2009, MCI again required capital contributions from its members. When Appellant failed to make the additional deferred capital contribution, the other members found Appellant to be in default and sought to remedy the situation by purchasing Appellant's interest in the company. There was no monetary exchange between Appellant and Respondents with respect to the purchase of Appellant's interest in MCI.

**4.** Appellant renewed his request for a jury trial before the commencement of trial.

cate the original Notes' whereabouts, despite their efforts to do so.

At the close of evidence, Respondents moved for leave to amend the pleadings to conform to the evidence regarding Respondents' inability to locate the original Notes. Appellant objected to the motion, arguing that he had objected to the introduction of such evidence throughout the trial as outside the scope of the pleadings. The circuit court took the matter under advisement with the case.

On October 23, 2012, the circuit court issued its judgment, which awarded each Respondent the amount due under their respective Note plus interest and attorneys' fees. In its judgment, the circuit court explained that Respondents were entitled to enforce the Notes in ·that they were once in possession of the original Notes, they had not transferred the Notes, and they could not locate the original Notes' whereabouts at the time of trial. The circuit court also granted Respondents' request for leave to amend their pleadings to conform to the evidence regarding the Notes' whereabouts pursuant to Rule 55.33(b). The circuit court noted that although Appellant objected to the introduction of such evidence, no prejudice would result from Respondents amending the pleadings because the evidence did not change the substance of the petitions, the terms of the Notes were not in dispute, and Appellant had already admitted to executing the Notes. The circuit court went on to dismiss Appellant's request for a set-off after finding that it was without authority to consider the request because it pertained to issues that fell squarely within the scope of the Operating Agreement's arbitration provision.

■ Appellant now raises four points of error on appeal. In his first point, Appellant contends that the circuit court erred in denying him his constitutional right to a jury trial. Article I, section 22(a) of the Missouri Constitution establishes the right to a jury trial in certain civil cases. *Bydalek v. Brines,* 29 S.W.3d 848, 856 (Mo.App. S.D.2000). A trial court may not deny a party its right to a jury trial absent a waiver of that right by the party. *Id.* Thus, a trial court commits reversible error if it denies a party its right to a jury trial in a civil case that is otherwise triable by jury. *Id.*

■ A party can contractually waive its constitutional right to a jury trial. *Savannah Place, Ltd. v. Heidelberg,* 122 S.W.3d 74, 79 (Mo.App.S.D.2003). The validity of a contractual jury waiver "depends on whether the defendant knowingly and voluntarily consented to relinquish [his or] her right to a jury trial."[5] *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 627 (Mo. banc 1997). Contractual waivers of one's right to a jury trial "will never be implied but must be clearly and explicitly stated." *Id.* An effective contractual jury-waiver provision, therefore, requires the use of clear, unambiguous, unmistakable, and conspicuous language. *Id.*

■ Appellant does not dispute the validity of the jury-waiver provisions contained in the Guaranties. Rather, Appellant contends that the Guaranties' jury-waiver provisions are inapplicable to the present action because Respondents brought suit for breach of the Notes, not the Guaranties, and the Notes do not contain jury-waiver provisions. Respondents

---

5. In determining whether a party knowingly and voluntarily relinquished its right to a jury trial, courts have examined the "negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision." *Malan Realty,* 953 S.W.2d at 627.

acknowledge that the Notes do not contain a jury-waiver provision. Nevertheless, they aver that Appellant waived his right to a jury trial in the present case because the Guaranties and the Notes were executed at the same time and, therefore, must be construed together.

We recognize that a guaranty "is a collateral agreement for another's undertaking, and is an independent contract which imposes responsibilities different from those imposed in the agreement to which it is collateral." *Derges v. Hellweg*, 128 S.W.3d 186, 191 (Mo.App.S.D.2004) (internal quotation omitted). However, "[a] guaranty agreement may be construed together with any contemporaneously executed agreements dealing with the same subject matter as an aid in ascertaining the intention of the parties." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 434 (Mo. banc 2003). In fact, "when several instruments relating to the same subject are executed at the same time[,] . . . the documents will be construed together, even in the absence of explicit incorporation, unless the realities of the situation indicate that the parties did not so intend." *Johnson ex rel. Johnson v. JF Enters., LLC*, 400 S.W.3d 763, 767 (Mo. banc 2013) (emphasis and quotation omitted). Such is true even when the instruments are "not part of a single contract." *Id.*

Here, Appellant executed and signed all the Notes and Guaranties on January 19, 2009. Each Note was attached as an exhibit to its corresponding Guaranty, and each Guaranty specifically references the corresponding Note executed by Appellant. Thus, the Notes and Guaranties were executed contemporaneously and clearly relate to the same subject matter. Accordingly, the Notes and Guaranties should be construed together in order to ascertain the intention of the parties with respect to the jury-waiver provisions.

We first note that the Guaranties contain language indicating that they were an essential step in ensuring execution of the Notes. The Guaranties state that Appellant "expressly acknowledges" that Respondents are "relying upon [the Guaranties] in extending credit to Borrower [Appellant]." The Guaranties further provide that Respondents have accepted the Guaranties "as a material inducement to the extension of credit to the Borrower [Appellant]." Such language intimates that the Guaranties, which contain jury-waiver provisions, played an integral role in Respondents extending credit to Appellant in exchange for the Notes.

Furthermore, the language in the jury-waiver provisions themselves indicates that the provisions relate to the Notes. The Guaranties' jury-waivers provide:

TO THE EXTENT PERMITTED BY APPLICABLE LAW, AND ACKNOWLEDGING THAT THE CONSEQUENCES OF SAID WAIVER ARE FULLY UNDERSTOOD, GUARANTOR HEREBY EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INSTITUTED AGAINST GUARANTOR OR ANY OTHER PERSON LIABLE ON THE NOTE.

The term "Note", as used in the Guaranties, refers to the "promissory note[s] dated effectively January 19, 2009, executed by [Appellant], payable to [Respondents] . . . ." Thus, the jury-waiver provisions specifically reference the Notes executed by Appellant. More importantly, the jury-waiver provisions address Appellant's right to a jury trial in all actions and proceedings instituted against him, as the guarantor, *and* "any other person liable on the Note[s]." Appellant was and remains the only person liable on the Notes. Thus,

by referencing all legal proceedings instituted against persons liable on the Notes, the jury-waiver provisions speak to all actions that could be instituted against Appellant with respect to his liability on the Notes.

Appellant cites *Hulsey v. West*, 966 F.2d 579, 581 (10th Cir.1992), and *Popular Leasing USA, Inc. v. Terra Excavating, Inc.*, No. 4:04CV1625 CAS, 2005 WL 2468069, at *4 (E.D.Mo. Oct. 6, 2005), for the proposition that "[g]enerally, a jury waiver provision in a contract or lease affects only the rights of the parties to that contract or lease." Unlike *Hulsey* and *Popular Leasing*, however, this is not a case in which the instruments were executed several years apart, *Hulsey*, 966 F.2d at 582, or a situation in which the instruments were signed by individuals in their different capacities. *Popular Leasing*, 2005 WL 2468069, at *4 (finding that the lease's jury-waiver provision applied only to the company, not the guarantor, because the guaranty did not contain a jury-waiver provision and the guarantor did not sign the lease in his individual capacity). In fact, several other jurisdictions have found a jury-waiver provision enforceable against parties that signed contemporaneously executed instruments even though the particular instrument they signed did not contain a jury-waiver provision. *See Rhode Island Depositors Econ. Protection Corp. v. Coffey & Martinelli, Ltd.*, 821 A.2d 222, 227 (R.I.2003) (finding that a jury-waiver provision in a promissory note applied to a guarantor because the note and guaranty were part of a continuing transaction and the guaranty "refer[red] to the promissory note and subscribe[d] to all obligations and requirements contained" in the note); *L & R Realty v. Conn. Nat'l Bank*, 246 Conn. 1, 715 A.2d 748, 756 n. 11 (1998) (finding that a guarantor was bound by a contractual jury-waiver contained in a loan agreement,

but not in the guaranty, because the instruments were entered into as part of the same transaction); *Chase Commercial Corp. v. Owen*, 32 Mass.App.Ct. 248, 588 N.E.2d 705, 707 (1992) (finding that jury-waiver provisions contained in a loan and a security agreement were applicable to a guaranty that was signed at the same time, made reference to the other agreements, and was interrelated in purpose); *Chemical Bank v. Summers*, 67 A.D.2d 856, 856, 413 N.Y.S.2d 148 (N.Y.App.Div. 1979) (finding that the guarantors waived their right to a jury trial on the cause of action pertaining to guaranty because the promissory notes' jury-waiver provision specifically, by its terms, applied to guarantors); *Franklin Nat'l Bank of Long Island v. Capobianco*, 25 A.D.2d 445, 445, 266 N.Y.S.2d 961 (N.Y.App.Div.1966) (holding that a jury-waiver provision in a loan agreement applied to a suit involving a guaranty on that loan because the instruments were executed contemporaneously and "[t]he right to a jury trial may be waived in an instrument other than that representing the agreement upon which the action is founded").

We recognize that a party has a fundamental and constitutional right to trial by jury in civil actions at law for which damages may be awarded. *See Obermiller Const. Servs., Inc. v. Pub. Water Supply Dist. No. 5 of Cass Cnty.*, 319 S.W.3d 545, 547 (Mo.App.W.D.2010). We further recognize that to contractually waive that right, there must be clear, unambiguous, unmistakable, and conspicuous contractual language to that effect. *See Malan Realty*, 953 S.W.2d at 627. However, in this case we have a situation in which the same party drafted the promissory notes *and* the guaranties, the guaranties contain explicit jury-waiver provisions, those jury-waiver provisions specifically reference actions and proceedings instituted against

those liable on the notes, the guaranties expressly state they served as a material inducement in procuring the notes' execution, and the same party contemporaneously signed and executed all the notes and guaranties in his individual capacity.[6] Under such circumstances, it is beyond doubt that Appellant knowingly and voluntarily consented to relinquish his right to a jury trial. Accordingly, the circuit court did not commit reversible error by striking Appellant's demand for a jury trial. Point denied.

■ In his second point, Appellant avers that the circuit court erred in entering judgment in favor of Respondents because Respondents failed to meet their burden of establishing that they were holders of their respective Note.[7] We review court-tried cases pursuant to the standard enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Hilty Family Ltd. P'ship, LP v. Scott*, 379 S.W.3d 883, 886 (Mo.App.W.D.2012). We will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law, accepting all evidence and inferences thereform in the light most favorable to the prevailing party and disregarding all contrary evidence." *Id.* (internal quotation omitted). Moreover, we defer to the

---

**6.** As Appellant points out in his reply brief, the Guaranties executed by Appellant are seemingly illusory and redundant because Appellant is guarantying promissory notes that he is already obligated to pay. *See All Am. Supply Co. v. Four Seasons Mechanical, Inc.*, 152 S.W.3d 884, 887 (Mo.App.W.D.2005) (finding that a guaranty was ambiguous because, according to the plain language of the guaranty, the guarantor was guarantying her own contract, thus making her both the obligor and the guarantor); *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 596 (Mo.App.1977) (noting that "a guaranty contract signed individually by principals of [a] corporation if construed to be the corporation's guaranty of its own contract would be redundant, illusory, absurd, and therefore unreasonable"). "The phrase 'illusory promise' means words in promissory form that promise nothing." *Magruder Quarry & Co. v. Briscoe*, 83 S.W.3d 647, 650 (Mo.App.E.D.2002) (internal quotation omitted). "An illusory promise is not a promise at all and cannot act as consideration; therefore no contract is formed." *Id.* As the maker of the Notes, Appellant was already obligated to repay Respondents the principal sums of the Notes plus interest. In the Guaranties, Appellant promises to pay all present and future indebtedness under the Notes. Thus, by guarantying the Notes that he was already obligated to repay, Appellant seemingly promised nothing when he executed the Guaranties. Nevertheless, where it is clear the parties intended to contract, Missouri courts have tended "to up-

hold the contract by finding the promise was not illusory." *Id.* And "[i]f there is a restriction, express or implied, on the promisor's ability to terminate or to refuse to perform, the promise is not illusory." 2 *Corbin on Contracts*, § 5.28, at 149 (rev. ed.1995). In addition to his promise to repay the Notes, Appellant also promised to "deliver financial statements ... to [Respondents] by April 15th of each year" and to "waive[ ] the right to trial by jury in any action or proceeding instituted against [him] or any other person liable on the note." Thus, the Guaranties contain restrictions on Appellant's ability to repay and, therefore, do not constitute illusory contracts.

**7.** Appellant further contends that the circuit court erroneously shifted the burden to him to establish that Respondents were not the holders of the Notes. In its judgment, the circuit court did state that Appellant waited until Respondents' "case-in chief to challenge whether [Respondents] were the true holders of the Notes, despite the opportunity to make th[e] challenge during the case's two and a half year pendency" and that Appellant did not specifically raise the issue as an affirmative defense. Nevertheless, the circuit court discussed the evidence regarding Respondents' status as holders of the Notes at length and clearly analyzed whether Respondents proved they were entitled to enforce the Notes. Thus, the circuit court did not shift the burden to Appellant to prove Respondents were not holders of the Notes.

trial court's factual findings, as it is in a better position to judge the credibility of witnesses. *Id.*

▮ Appellant contends that Respondents cannot enforce the Notes because they failed to prove they were holders of their respective Notes. To be entitled to enforce a promissory note, one must be: "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 400.3–309 or 400.3–418(d)." § 400.3–301.[8] With respect to promissory notes, a holder is "the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." § 400.1–201(20) RSMo Cum.Supp.2009.

Respondents concede that they are not holders of the Notes in the sense that they are not currently in possession of the original Notes. Nevertheless, Respondents contend, and the circuit court found, that they are still entitled to enforce the Notes pursuant to § 400.3–309. Section 400.3–309(a) provides that:

A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Thus, despite being unable to produce the Notes, Respondents are still entitled to enforce them by establishing that they possessed the Notes at one time, that the Notes have not been transferred, and that, currently, the Notes' whereabouts cannot be determined.

The circuit court concluded that Respondents satisfied the § 400.3–309(a) requirements for enforcement of lost notes. There is sufficient evidence in the record to support the circuit court's finding.

▮ Mark Horstmann, testifying on behalf of the Horstmann Trusts, stated that he did not know where the Notes were. He later testified that the trusts were in possession of the original Notes at some point, but he was unable to locate the originals despite his efforts to do so. Likewise, Jenkins testified that, at one time, he was in possession of the original Note executed by Appellant, but he had since not been able to locate it even though he had looked for it. Similarly, Lisa Wait testified, on behalf of Midland Property, that the company was in possession of the original Note at some point and that she had since not been able to find the original. All Respondents further testified that they had not assigned their respective Note to anyone. Given such testimony, we cannot say the circuit court erred in concluding that Respondents were entitled to enforce the lost Notes.[9]

8. All statutory references are to RSMo 2000 unless otherwise noted.

9. Appellant further challenges the admission of Respondents' rebuttal testimony regarding the location of the original Notes. Appellant contends that such rebuttal testimony was inadmissible because the evidence should have been presented in Respondents' case-in-chief. *See Stone v. City of Columbia*, 885 S.W.2d 744, 748–49 (Mo.App.W.D.1994) (noting that "[a] party should not be allowed to offer, as rebuttal, evidence which should have been raised in the party's case in chief, even if

■ Appellant further contends that the circuit court erroneously permitted Respondents to amend their pleadings after the close of evidence pursuant to Rule 55.33(b). "Rule 55.33(b) permits amendment of the pleadings to conform to the evidence." *Ratcliff v. Sprint Mo., Inc.*, 261 S.W.3d 534, 542 (Mo.App.W.D.2008). It provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. *If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would cause prejudice in maintaining the action or defense upon the merits.* The court may grant a continuance to enable the objecting party to meet such evidence.

Rule 55.33(b) (emphasis added).

■ Here, Appellant objected to evidence regarding Respondents' status as holders of the Notes as evidence outside of the pleadings. Where an objection is made to evidence of unpleaded facts or claims, "the trial court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to show prejudice." *Ratcliff,* 261 S.W.3d at 542 (internal quotation omitted). "We afford great discretion to the trial court on this issue, and will not disturb its decision on appeal absent an obvious and palpable abuse of discretion." *R.J.S. Sec., Inc. v. Command Sec. Servs., Inc.,* 101 S.W.3d 1, 21 (Mo. App.W.D.2003).

The circuit court granted Respondents' motion for leave to amend their respective petitions to conform to the evidence that the Notes were lost. The circuit court determined that no prejudice to Appellant would result because the amendments to the pleadings would not change the substance of Respondents' petitions, Appellant admitted he had executed the Notes, and the terms of the Notes were not in dispute.

Appellant offers no argument in his brief as to how he was prejudiced by Respondents' amendment of their petitions. Instead, he merely avers that the circuit court erroneously permitted Respondents to amend their pleadings because he objected to the introduction of evidence that the Notes were lost and, therefore, did not expressly or implicitly consent to trying the issue. As previously explained, pleadings can still be amended to conform to the evidence despite objections to the introduction of such evidence at trial. *See* Rule 55.33(b). Thus, Appellant has failed to establish prejudice. Accordingly, the circuit court did not abuse its discretion in granting Respondents' motion to amend their pleadings. Point denied.

that evidence tends to rebut the opposite party's evidence"). Appellant, however, failed to raise this objection at trial; thus, it was not preserved for our review. *See Rogers v. B.G. Transit Corp.,* 949 S.W.2d 151, 153 (Mo.App. S.D.1997) (explaining that "[t]o preserve evidentiary questions for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced" and that an appellant cannot "alter or broaden the scope of the objection on appeal").

■ In his third point, Appellant contends that the circuit court erred in dismissing his request for a set-off because the circuit court erroneously determined that his request for a set-off constituted a counterclaim that had to be arbitrated. The circuit court, however, did not expressly find that Appellant's request for set-off constituted a counterclaim. Rather, the circuit court found that the Operating Agreement prohibited it from deciding whether Appellant was entitled to a set-off.

■ The circuit court concluded that it was without authority to consider Appellant's request for set-off because Appellant's request fell squarely within the scope of the Operating Agreement's arbitration provision. "[W]here there is a broad arbitration provision, the trial court should order arbitration of any dispute that touches matters covered by the parties' contract." *Manfredi v. Blue Cross & Blue Shield of Kansas City*, 340 S.W.3d 126, 130 (Mo.App.W.D.2011) (internal quotation omitted). The arbitration provision in the Operating Agreement provides that "all disputes and controversies between any of the Members and/or Managers relating to the subject matter of this Agreement shall be resolved by arbitration...." Such a provision purports to encompass all disputes and controversies between members relating to subjects covered by the Operating Agreement. Thus, the Operating Agreement contains a broad arbitration provision that requires all disputes pertaining to the Operating Agreement to be addressed in arbitration.

Appellant's request for a set-off stems from his claim that Respondents failed to follow the proper procedures set out in the Operating Agreement for purchasing his 30% interest in MCI. He contends that any damages awarded to Respondents must be offset by the amount Respondents should have paid him had they followed the proper procedures, as set forth in the Operating Agreement, for purchasing his interest. The basis for Appellant's request, therefore, clearly pertains to the Operating Agreement and, thus, falls squarely within the scope of the Operating Agreement's broad arbitration provision. Accordingly, the circuit court did not err in finding that it was without authority to determine Appellant's request for a set-off. Point denied.

■ In his fourth point, Appellant asserts that the circuit court erred in awarding attorneys' fees to Respondents because the Notes, on their face, do not expressly provide for the recovery of attorneys' fees. Generally, Missouri courts follow the American Rule, which requires each litigant to bear the expense of his or her own attorneys' fees. *Lee v. Investors Title Co.*, 241 S.W.3d 366, 367 (Mo.App. E.D.2007). Thus, not every successful litigant is entitled to an award of attorneys' fees. *Lucas Stucco & EIFS Design, LLC v. Landau*, 324 S.W.3d 444, 445 (Mo. banc 2010). Rather, attorneys' fees are typically recoverable only "when a statute specifically authorizes recovery or when attorneys' fees are provided for by contract." *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 657 (Mo. banc 2009).

■ "If a contract provides for the payment of attorney's fees in the enforcement of a contract provision, the trial court must award them to the prevailing party." *Lee*, 241 S.W.3d at 368 (internal quotation omitted). Thus, a trial court's has no discretion whether to award attorneys' fees where they are recoverable by contract, and its failure to do so is erroneous. *Id.*

■ Here, the circuit court found that the Notes contractually provided for Respondents' recovery of attorneys' fees based upon a provision stating that Appellant must pay "all reasonable costs in-

curred by the [Respondents] in collecting or enforcing payment [of the Notes]." Appellant avers that the term "costs" does not include attorneys' fees and, therefore, cannot constitute a basis for the circuit court's award of attorneys' fees. We agree.

As the parties point out, it is generally understood that the term "costs", when used in the statutory context, does not include attorneys' fees. *See Fisher v. Fisher*, 874 S.W.2d 543, 547 (Mo.App.W.D. 1994); *Reed v. City of Springfield*, 841 S.W.2d 283, 286 (Mo.App.S.D.1992); *see also Prudential Ins. Co. of Am. v. Goldsmith*, 239 Mo.App. 188, 192 S.W.2d 1, 4 (1945) (explaining that "[t]he term 'costs' or 'expenses', as used in a statute, is not understood ordinarily to include attorneys' fees"). On the other hand, Missouri courts have seldom addressed whether the term "costs," when used in a contract, encompasses attorneys' fees.

Respondents rely upon *In re Mason*, 203 S.W.2d 750, 756–57 (Mo.App.K.C. 1947), in support of their position that the term "costs" is synonymous with "attorneys' fees" when used in a contract. Respondents' reliance on *Mason*, however, is misplaced.

*Mason* involved a disciplinary action against an attorney that had drafted petitions requesting attorneys' fees in actions for breach of contract in which the contract at issue allowed for the recovery of "any collection expense." *Id.* at 755. After citing several cases from other jurisdictions that had found the terms "costs" and "expenses" could encompass attorneys' fees, the commissioner assigned to review the attorney's conduct found that there was authority to support the attorney's belief that attorneys' fees could be construed as a "collection expense" under the contract. *Id.* at 757. But in reviewing the commissioner's determination, we noted

this Court's opinion in *Goldsmith*, 192 S.W.2d at 4—which was decided after the disciplinary actions against the attorney had commenced—in which we found that attorneys' fees are "'not allowable in the absence of a statute or of some agreement *expressly authorizing* the taxing of attorneys' fees in addition to the ordinary statutory costs.'" *Mason*, 203 S.W.2d at 759 (quoting *Goldsmith*, 192 S.W.2d at 4) (emphasis added). Thus, although we did not reverse the commissioner's findings as to misconduct, we did recognize that the term "collection expense", as used in a contract, typically would not encompass attorneys' fees.

In *Goldsmith*, family members of a man believed to be dead issued a surety bond to the insurance company in order to collect on his life insurance. 192 S.W.2d at 2. A provision in the surety bond provided that the family members "shall fully indemnify ... [the insurance company] from all loss, expense, and damage" upon a finding that the man was still alive. *Id.* The insurance company brought suit upon discovering that the man was alive, and the trial court awarded attorneys' fees because the surety bond provided for indemnification for all "expense." In reversing the trial court's award of attorneys' fees, we explained that:

> The right to recover attorneys' fees from one's opponent in litigation as a part of the costs thereof does not exist at common law. Such an item of expense is not allowable in the absence of a statute or of some agreement *expressly authorizing* the taxing of attorneys' fees in addition to the ordinary statutory costs.

*Id.* at 4 (emphasis added). We then went on to state that "[g]enerally, ... attorneys' fees are not included within a contractual provision for the payment of 'expenses.'" *Id.*

Thus, as indicated by our reasoning in *Goldsmith* and *Mason,* Missouri courts, in accordance with the American rule, have favored the award of attorneys' fees only where a contract expressly authorizes their recovery.[10] Here, the Notes provide merely that Appellant must pay "all reasonable costs incurred by the [Respondents] in collecting or enforcing payment [of the Notes]." Such language does not expressly authorize the recovery of attorneys' fees in addition to the other ordinarily recoverable statutory costs. The Notes, therefore, do not contain a provision that would expressly permit Respondents to recover attorneys' fees. Thus, the circuit court erred in awarding attorneys' fees to Respondents. Point granted.

Accordingly, we must reverse the circuit court's judgment as to the award of attorneys' fees. The judgment is affirmed in all other respects, and the case is remanded to the circuit court to enter a judgment consistent with this opinion.

All concur.

10. The parties cite no other Missouri cases on the issue of whether the term "costs" includes attorneys' fees when used in a contract. Our independent research, however, has uncovered one Missouri case since *Mason* and *Goldsmith* that has discussed whether the term "costs" can be construed to include attorneys' fees in the context of a contract. In *Champion Sports Center, Inc. v. Peters,* 763 S.W.2d 367, 371 (Mo.App.E.D.1989), a contract provided that the defendant would indemnify the corporation buying his business in "[a]ll actions, suits, proceedings, demands, assessments, judgments, costs, and expenses" resulting from non-fulfillment of the agreement. The business filed suit after the defendant violated the contract's non-compete clause, and the trial court awarded attorneys' fees. *Id.* at 369. In affirming the award of attorneys' fees, the Eastern District of this Court noted that "[c]ontractual provisions which require a party to pay costs and expenses do not generally allow for the payment of attorney's fees." *Id.* at 371. Nevertheless, the court found that "when a contract specially provides that a party must pay all costs and expenses related to litigation and other legal proceedings, attorney's fees are recoverable" and, thus, affirmed the trial court's award of attorneys' fees. *Id.*

In support of the proposition that attorneys' fees are recoverable when a contractual provision provides for costs and expenses related to litigation or other legal proceedings, the Eastern District relied solely upon our opinion in *Goldsmith,* 192 S.W.2d at 4. But *Goldsmith*'s holding does not support such a proposition. Rather, in *Goldsmith,* we simply noted, in passing, that a Kentucky court had held "that the clause 'expense of litigation' in a liability insurance policy would include attorneys' fees." *Id.* (citing *Aetna Life Insur. Co. v. Bowling Green Gas Light Co.,* 150 Ky. 732, 150 S.W. 994 (1912)). Our opinion in *Goldsmith* gives no further analysis of the Kentucky case, nor did it apply the Kentucky court's reasoning or holding in finding attorneys' fees *were not recoverable.* Therefore, it would appear the *Champion* court misconstrued *Goldsmith* in reaching its decision that the corporation could recover attorneys' fees.

In any event, our decision today is entirely consistent with this Court's prior holding in *Goldsmith.* To the extent our holding is inconsistent with *Champion,* we choose not to follow it.