

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

LUCINDA "CINDY" GUTHRIE,      )
     )
     Appellant,      )
     )      **WD79287**
v.      )      **(Consolidated with WD79328)**
     )
     )      **OPINION FILED:**
MISSOURI DEPARTMENT OF LABOR      )      **October 25, 2016**
AND INDUSTRIAL RELATIONS,      )
     )
     Respondent.      )

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Patricia S. Joyce, Judge**

**Before Division IV:** Mark D. Pfeiffer, Chief Judge, and
Victor C. Howard and Gary D. Witt, Judges

The Missouri Department of Labor and Industrial Relations ("Department") initiated an appeal in this court[1] of the judgment of the Circuit Court of Cole County, Missouri ("circuit court"), refusing to follow the ruling of the Administrative Hearing Commission ("AHC") that attorney's fees to the prevailing party, Lucinda Guthrie ("Guthrie"), were limited to the section 536.087[2] prescribed rate of $75 per hour and, instead, awarding attorney's fees at a rate

---

[1] As we explain in our ruling, however, it is actually Ms. Guthrie who was aggrieved by the agency decision and, hence, Ms. Guthrie who is responsible for filing the appellant's brief and bears the burden of persuasion on appeal. Accordingly, to more accurately refer to the status of the parties on appeal, we refer to Ms. Guthrie as the appellant and the Missouri Department of Labor and Industrial Relations as the respondent.

[2] All statutory references are to the Revised Statutes of Missouri 2000 as supplemented.

per hour in excess of the statutorily prescribed rate. We conclude that the AHC's attorney's fees ruling was supported by competent and substantial evidence and it was not contrary to the law or in excess of the agency's jurisdiction. Thus, we reverse the circuit court's judgment and reinstate the AHC's ruling.[3]

## Compliance with Briefing Requirements

As a threshold matter, we address Guthrie's failure to comply with the briefing requirements of Rule 84.04.[4]

When an appeal is taken from a circuit court judgment that reverses the decision of an administrative agency, we review the decision of the *agency* rather than of the *circuit court*, and the party aggrieved by the agency decision has the duty to file the appellant's brief and bears the burden of persuasion before this court. Rule 84.05(e). *See Bird v. Mo. Bd. of Architects, Prof'l Eng'rs, Prof'l Land Surveyors & Landscape Architects*, 259 S.W.3d 516, 520 n.7 (Mo. banc 2008) ("When a circuit court's judgment is appealed, the appellate court does not review the circuit court's decision, but rather the agency decision, that is, the AHC's findings and conclusions . . . . Accordingly, the circuit court's judgment—and of course the petition for review that began the circuit court process—is of no particular interest when the matter is appealed . . . to the court of appeals . . . ." (footnote and citation omitted)).

Although the Department initiated this appeal as the party aggrieved by the *circuit court's* decision, Guthrie was responsible for filing the appellant's brief under Rule 84.05(e) because she was aggrieved by the *AHC's* decision. *See Atwell v. Fitzsimmons*, 452 S.W.3d 670, 673 n.2 (Mo. App. W.D. 2014). "[T]he party who contests the agency decision bears the burden of persuading

---

[3] While the decision we review on appeal is that of the AHC and not the circuit court, we reverse, affirm, or otherwise act upon the judgment of the circuit court. *Bird v. Mo. Bd. of Architects, Prof'l Eng'rs, Prof'l Land Surveyors & Landscape Architects*, 259 S.W.3d 516, 520 n.7 (Mo. banc 2008) (citing Rule 84.14).

[4] All rule references are to I MISSOURI COURT RULES—STATE 2016.

the appellate court that the agency decision was in error, even though that party did not appeal to this court." *Ringer v. Mo. Dep't of Health & Senior Servs*., 306 S.W.3d 113, 114 (Mo. App. W.D. 2010). If a party prevails at the agency level, but then is later unsuccessful at the circuit court level, it is not that party's burden to claim error in an appellate brief because it prevailed at the agency level, which is the decision we review. *Id.*

With that procedural backdrop, then, we note that Guthrie's points on appeal violate Rule 84.04(d)(2), in that they focus upon arguments related to *circuit court* rulings rather than challenged *AHC* rulings. "Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Summers v. Mo. Dep't of Corr.*, 459 S.W.3d 922, 923 (Mo. App. W.D. 2015) (internal quotation omitted). "An appellant's failure to substantially comply with Rule 84.04 preserves nothing for our review and is grounds for dismissing the appeal." *Id.* (internal quotation omitted). "Whether to dismiss an appeal for briefing deficiencies is discretionary. That discretion is generally not exercised unless the deficiency impedes disposition on the merits." *Maskill v. Cummins*, 397 S.W.3d 27, 31 (Mo. App. W.D. 2013) (internal quotation omitted). Generally speaking, "[a]n appellate court prefers to resolve an appeal on the merits of the case rather than to dismiss an appeal for deficiencies in the brief." *Id.* Here, despite the substantial noncompliance with Rule 84.04, we are able to discern the gist of Guthrie's allegations of error by the AHC and argument thereto; therefore, we have chosen to exercise our discretion to review the substance of Guthrie's claims on appeal.

**Factual and Procedural Background**

Guthrie was employed as Chief of Employer Contributions with the employment security division of the Department. She worked with the State Unemployment Tax Act ("SUTA")

computer detection system, which aided the Department's efforts to find which companies rearranged their corporate organization for the express purpose of obtaining a lower unemployment insurance tax (known as "SUTA dumping"). The detection of SUTA dumping was within Guthrie's responsibilities.

On Thursday, January 31, 2011, the Director of the Department ("Director")[5] gave Guthrie the choice between retirement or termination, allegedly for failing to detect SUTA dumping, and requested that she let him know her decision on Monday, February 4, 2013. Guthrie contacted her supervisor, Gracia Backer. Ms. Backer recommended that Guthrie contact attorney Roger Brown, because Backer was aware that he had worked for the Department before practicing law and that he had represented clients in merit system and in age and gender discrimination cases. Guthrie contacted Mr. Brown, and he agreed to represent her. With Guthrie's assistance as to the factual background, Mr. Brown prepared a letter for Guthrie to take into work on Monday to provide a timeline of compliance with the SUTA issues. The Director dismissed Guthrie from employment on Monday, February 4, 2013.

Guthrie appealed her discharge to the Personnel Advisory Board, after which the Department reinstated Guthrie to her former position with all back pay and benefits, as though there had been no break in service. The Department filed a notice of reinstatement and requested that the AHC resolve Guthrie's attorney's fees claims (as the prevailing party) pursuant to sections 536.085 and 536.087. In Guthrie's application for attorney's fees, Mr. Brown's time was itemized and billed at the rate of $275 per hour and Mr. Brown's co-counsel, David Moen, itemized and billed his time at the rate of $250 per hour.

---

[5] Lawrence G. "Larry" Rebman was the Director of Labor and Industrial Relations from 2009 to March 2013. Ryan McKenna is presently the Director. Any reference in the factual background of this opinion to the Director is to Mr. Rebman.

4

The AHC held a hearing on the application. The Department did not contest that Guthrie was statutorily entitled to an award of attorney's fees as the prevailing party; rather, the issue raised by the Department was whether Guthrie's attorneys were limited to recovering the statutorily prescribed hourly rate of $75.

Mr. Moen testified about the special factors he believed justified attorney's fees at a rate higher than $75 per hour. He stated that there was a limited number of qualified attorneys who could handle Guthrie's case, primarily because of the complicated reasons for Guthrie's dismissal, including the SUTA dumping, the DES's lack of a sophisticated computer system, and issues relating to "for the good of the service." Mr. Moen opined that the combined causes of action—merit system and discrimination—was a special factor. Mr. Moen further opined that a reasonable hourly rate for work performed by Guthrie's attorneys was $250 per hour. Mr. Brown testified that he charged Guthrie $275 per hour based on his experience and specialized knowledge. A representative from the Department's general counsel's office testified that from 2011 through 2013 there were 230 personnel cases on the AHC's website; 193 were closed and thirty-seven were open; of the thirty-seven open cases, sixteen cases were being handled by fourteen different attorneys, and two of those attorneys were from Jefferson City.

The AHC found that Guthrie's costs and expenses totaled $1,974.24, and Guthrie does not challenge the AHC's award of costs and expenses in that amount. Likewise, Guthrie does not contest the AHC's ruling as to the number of hours Guthrie's attorneys spent pursuing her merit system administrative appeal. What Guthrie challenges is the AHC's conclusion that the work performed by Guthrie's attorneys was limited to the statutorily prescribed hourly rate of $75, resulting in an award of attorney's fees in the amount of $13,638.

5

Guthrie petitioned the circuit court to review the amount of attorney's fees awarded by the AHC, alleging that special factors in her case justified a rate higher than $75 per hour for her attorney's fees. Guthrie also alleged that the AHC decision violated her constitutional due process right to have her case decided on the merits with the assistance of qualified counsel. The circuit court held a hearing and thereafter entered judgment, finding that special factors existed in this case to justify an award above $75 per hour. The circuit court awarded Guthrie a total of $47,559.99 in attorney's fees, calculated at the rate of $275.00 per hour for Mr. Brown and $250.00 per hour for Mr. Moen.

The Department timely appealed the circuit court's judgment.

**Standard of Review**

We review the decision of the AHC and not the decision of the trial court. *Sprenger v. Mo. Dep't of Pub. Safety*, 340 S.W.3d 109, 111 (Mo. App. W.D. 2010). When fees and expenses are awarded to a prevailing party pursuant to section 536.087, our standard of review is defined by section 536.087.7 as follows:

> The reviewing or appellate court's determination on any judicial review or appeal heard under this subsection shall be based solely on the record made before the agency or court below. The court may modify, reverse or reverse and remand the determination of fees and other expenses if the court finds that the award or failure to make an award of fees and other expenses, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's or agency's jurisdiction.

Whether the AHC's award of fees and expenses is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. *Baker v. Dep't of Mental Health*, 408 S.W.3d 228, 231 (Mo. App. W.D. 2013). "Whether an award of fees and expenses pursuant to section 536.087 was made contrary to law or in excess of the court's or agency's jurisdiction or authority raises a question of law we review *de novo*." *Id.* at 232.

6

**Analysis**

**Point I**

In Guthrie's first point on appeal, the gist of her claim is that the AHC erred in awarding attorney's fees at the statutory rate of $75 per hour because "all of the competent and substantial evidence indicated that this case was unusually complex and that Attorney Brown had specialized knowledge and experience justifying a higher rate than $75 per hour."

Section 536.087.1 provides that a prevailing party in an agency proceeding "shall be awarded those reasonable fees and expenses incurred by that party." "Reasonable fees and expenses" with regard to attorney's fees means that:

> [A]ttorney fees shall not be awarded in excess of seventy-five dollars per hour **unless the court determines that a special factor, such as the limited availability of qualified attorneys for the proceedings involved**, justifies a higher fee[.]

§ 536.085(4) (emphasis added). The party requesting an award of attorney's fees bears the burden of presenting competent and substantial evidence to support the claim of a special factor; the agency is not required to prove the absence of a special factor. *Baker*, 408 S.W.3d at 236.

Section 536.087 was patterned after the Federal Equal Access to Justice Act, 28 U.S.C. § 2412 (1982) ("EAJA"). *Sprenger*, 340 S.W.3d at 112. Like Missouri's statutory scheme, the EAJA has a "special factor" provision referring to the "limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(2)(A). And, in a case interpreting this language, the United States Supreme Court held that the phrase allowing an increase for certain "special factor[s]" must be interpreted narrowly:

> "special factors" envisioned by the exception must be such as are not of broad and general application. . . . The "novelty and difficulty of issues," "the undesirability of the case," the "work and ability of counsel," and "the results obtained," are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are.

7

*Pierce v. Underwood*, 487 U.S. 552, 573, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988) (citation omitted).

Guthrie argues that a special factor exists for exceeding the statutory cap because her case was complicated and "was not the garden variety merit system appeal." Guthrie contends that Department-specific issues, such as "experience rating" and SUTA dumping, demonstrate the complexity of her merit system case. However, there was evidence in the record that other attorneys, both in the Jefferson City area and elsewhere in the state, handled state personnel cases. In fact, sixteen of thirty-seven open AHC personnel cases were handled by fourteen different attorneys, two of whom were from Jefferson City.

Simply put, Guthrie presented no evidence suggesting that the "factual complexity" of her case limited the availability of qualified attorneys to handle her case. This was not a situation where Guthrie asked an attorney to handle her case, and such attorney refused to represent Guthrie because of the complexity of her case. Even Mr. Brown testified that "there are lawyers out there who do State merit system causes of action claims." "If 'factual complexity' alone sufficed, as a matter of law, to constitute a special factor under section 536.085(4), the statutory cap would be eviscerated, as all proceedings would present the 'special factor [.]'" *Baker*, 408 S.W.3d at 239 (internal quotation omitted). "'[F]actual complexity' alone, without credible evidence of a concomitant effect of limiting the number of qualified attorneys available to handle a matter, is not a special factor as a matter of law." *Id.* at 239-40. Competent and substantial evidence exists in the record to support the AHC's finding that there was not a "limited availability of qualified attorneys" for Guthrie's case.

Guthrie also contends that Mr. Brown was the only attorney with the specialized skill and knowledge necessary to represent her in this case. Mr. Moen testified that Mr. Brown was the

only attorney he knew in central Missouri with a practice that included employment discrimination, merit system representation, and unemployment claims.[6]  Mr. Moen testified that Mr. Brown's understanding of contribution and experience ratings, SUTA dumping, and the State's computer system demonstrated Mr. Brown's expertise.  Mr. Brown testified that he had worked for the Department before practicing law and that he had specialized knowledge to handle a case that involved an allegedly contrived merit system discharge, based on Guthrie's alleged failure to detect SUTA dumping, and possible age and gender discrimination issues.

However, Mr. Brown also testified that he did not understand SUTA before Guthrie walked into his office.  Mr. Brown admitted, "I'd never heard of SUTA."  He stated that he did not have anything to do with SUTA-dumping detection when he worked at the Department from 1975-77 because it "was nonexistent at that time."  These admissions cut against a claim of "special expertise" as it relates to the topic of the alleged basis for Guthrie's termination by the Director.  Even Mr. Moen testified that, while he did not understand the details of how SUTA dumping works, he did not think the "broad brush" was terribly difficult to understand, and he proceeded to describe SUTA dumping in his testimony.  Thus, substantial and competent evidence exists in the record supporting the AHC's conclusion that this was not a case necessitating an attorney with:

> some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.  Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.  Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

---

[6] In this regard, Guthrie argues that it was preferable to have one attorney who was both experienced in merit system administrative appeals and discrimination litigation in civil proceedings.  Although it is understandable that a client may prefer to have a single lawyer handle both her administrative and trial proceedings, "client convenience or preference does not translate into a legal conclusion that there are a limited number of qualified attorneys *for the proceedings involved*," whether those proceedings are administrative hearings or civil trials.  *Baker v. Dep't of Mental Health*, 408 S.W.3d 228, 242 (Mo. App. W.D. 2013).

*Pierce*, 487 U.S. at 572.  We agree with the AHC's observation that "[a]lthough Brown has much experience in litigation, administrative law[,] and state personnel cases, and is a capable advocate, there is no distinctive knowledge or a specialized skill needed in this litigation."

Finally, though not raised in her point relied on, Guthrie argues in the argument section of her appellate brief that market factors are a special factor justifying an increase in the statutory attorney's fee.[7]  The evidence before the AHC in this proceeding was that there was no indication that there were any attorneys in the Jefferson City market who would work for $75 per hour.[8]  However, in interpreting the EAJA on this topic, the Supreme Court stated:

> We do not think Congress meant that if the rates for all lawyers in the relevant city—or even in the entire country—come to exceed $75 per hour . . . , then that market-minimum rate will govern instead of the statutory cap.  To the contrary, the "special factor" formulation suggests Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be.[9]

*Id.*  Likewise, in *Sprenger*, we held that evidence that the prevailing hourly rate for competent attorneys is higher than the statutory rate in section 536.085 was insufficient to support the finding of a special factor.  *Sprenger v. Mo. Dep't of Pub. Safety*, 340 S.W.3d 109, 112 (Mo. App. W.D.

---

[7] "It is well settled that errors raised for the first time in the argument portion of a brief, and that are not raised in the point relied on, need not be considered by this court."  *Howell v. State*, 357 S.W.3d 236, 248 (Mo. App. W.D. 2012).  *See also* Rule 84.04(e); *State v. Tooley*, 875 S.W.2d 110, 114-15 (Mo. banc 1994) (issues raised for the first time in the argument section of the appellate brief are waived).  That said, *ex gratia*, we have exercised our discretion to provide substantive analysis of Guthrie's "market factor" argument.

[8] As we noted in *Baker*:

> Section 536.085 has not been amended to adjust the cap on the hourly rate which can be awarded for over two decades.  This undermines the effectiveness of section 536.087 as a means to increase administrative agency accountability.  We reiterate the hope . . . that the General Assembly will reevaluate the fixed hourly rate cap set forth in section 536.085(4).  *Cf.* the Federal Equal Access to Justice Act, 28 U.S.C. section 2412 (1982) (amended to increase its statutory attorney fee cap to $125 and to permit a cost-of-living adjustment).

408 S.W.3d at 236 n.4 (citations omitted).

[9] Though the EAJA has since been amended by Congress to increase the statutory attorney's fee cap to $125 per hour, *see* n.8 *supra*, the reasoning of the *Pierce* court is of no less weight.  In other words, both the EAJA and section 536.085 are guided by legislative controls on the statutory cap and "market factors" alone simply do not constitute a "special factor" sufficient to override the cap on attorney's fees in either the EAJA or section 536.085.

10

2010).  *See also Cooling v. Dep't of Soc. Servs.*, 491 S.W.3d 253, 265 (Mo. App. E.D. 2016).  "Such a 'market rate' consideration, in and of itself, does not constitute a special factor justifying enhancement of the statutorily allowed attorney fees."  *Sprenger*, 340 S.W.3d at 113.  We observed that to hold otherwise "would eviscerate the statutory cap, as all proceedings would present the 'special factor.'"  *Id.* at 112.

Here, the AHC correctly noted that "Guthrie's argument that other local attorneys charged more than $75 per hour does not constitute a special factor. . . .  We are not free to set aside the text of § 536.085(4) to reach that conclusion."  Missouri's legislature controls the statutorily authorized fee in this case.  *Id.*  "The job of the judicial branch is to declare the law, not make the law."  *Id.*  Courts "may not disregard a statutory provision, for where the Legislature has enacted a statute which governs and determines rights of the parties under stated circumstances, equity courts equally with courts of law are bound thereby."  *McGhee v. Dixon*, 973 S.W.2d 847, 849 (Mo. banc 1998) (internal quotation omitted).  Section 536.085(4) "sets a new standard for recovery of attorney's fees in agency proceedings, and courts are bound thereby."  *Id.*

Given the express language of the statute, we cannot conclude that the AHC's ruling as to the rate of award of attorney's fees in this proceeding was arbitrary, capricious, unreasonable, was unsupported by substantial or competent evidence, or was made contrary to law.

Point I is denied.

## Point II

In Guthrie's second point, the gist of Guthrie's argument is that the AHC erred in awarding attorney's fees at the statutory rate of $75 per hour because section 536.085(4) is unconstitutional in that it violates her right to due process.  She argues that by limiting compensation to $75 per hour, there will be no legal representation for wrongfully terminated state employees who cannot

11

afford to hire an attorney at their own expense to exhaust their administrative remedies before pursuing relief in the circuit court.

The constitutionality of a statute is a legal issue that we review *de novo*. *Goins v. Goins*, 406 S.W.3d 886, 888 (Mo. banc 2013). "A statute's validity is presumed, and a statute will not be declared unconstitutional unless it clearly contravenes some constitutional provision." *Id.* "We review the constitutional challenge to see if it is substantial, in which case jurisdiction would vest in the Missouri Supreme Court. Mo. Const. Art. V, Sec. 3. If the challenge is merely colorable, we retain jurisdiction." *Tadrus v. Mo. Bd. of Pharmacy*, 849 S.W.2d 222, 225 (Mo. App. W.D. 1993). "In determining whether a constitutional claim is real and substantial, we make a preliminary inquiry as to whether it presents a contested matter of right that involves fair doubt and reasonable room for disagreement." *Higgins v. Treasurer of State of Mo.*, 140 S.W.3d 94, 98 (Mo. App. W.D. 2004). "If the initial inquiry discloses the claim is so legally or factually insubstantial as to be plainly without merit, the claim may be deemed merely colorable." *Id.* "We conclude, for the reasons set forth herein, that [Guthrie's] constitutional challenge is merely colorable and, thus, we have jurisdiction to address it." *Id.*

Here, we reject Guthrie's constitutional claim summarily because, simply put, there is no constitutional right to attorney's fees under either the United States Constitution or the Missouri Constitution. "Missouri courts follow the American Rule, which requires each litigant to bear the expense of his or her own attorneys' fees." *Midland Prop. Partners, LLC v. Watkins*, 416 S.W.3d 805, 817 (Mo. App. W.D. 2013). Despite this general rule, attorney's fees are recoverable when a statute specifically authorizes recovery or when a contract provides for attorney's fees. *Id.*

Section 536.087.1 authorizes an agency to award "reasonable fees and expenses" to a party prevailing in an agency proceeding brought by or against the State if it is determined that the

position of the State was not substantially justified or that special circumstances make an award unjust. "Reasonable fees and expenses" includes reasonable attorney's fees:

> The amount of fees awarded as reasonable fees and expenses shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of seventy-five dollars per hour unless the court determines that a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee[.]

§ 536.085(4). In the absence of statutory authorization, Guthrie would be responsible for all of her own attorney's fees; here, however, she is authorized by statute to recover attorney's fees that she would not otherwise be entitled to under the American Rule—though the fees authorized by statute are capped, perhaps recognizing the balancing act between the American Rule and an effort to assist merit-based government employees in the representation of their employment rights through the merit system administrative appeal process. Thus, the statutory cap on attorney's fees does not violate any of Guthrie's federal or state constitutional rights of due process; rather, the statute *promotes* the exercise of due process rights in the context of a merit system employee.

Point II is denied.

## Conclusion

The judgment of the circuit court is reversed, and the decision of the AHC is reinstated.

_____
Mark D. Pfeiffer, Chief Judge

Victor C. Howard and Gary D. Witt, Judges, concur.

13