

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| **RICHARD W. NOBLE,** | ) |
| | ) |
| Respondent, | ) |
| | )   **WD77476** |
| v. | ) |
| | )   **OPINION FILED:** |
| | )   **March 10, 2015** |
| **LINDA L. NOBLE,** | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Platte County, Missouri**
**The Honorable Gerald D. McBeth, Judge**

**Before Division Two:** Anthony Rex Gabbert, Presiding Judge, and
Joseph M. Ellis and Karen King Mitchell, Judges

Linda L. Noble (Wife) appeals the trial court's judgment, which quashed several garnishments Wife sought in aid of executing a monetary judgment against Richard W. Noble (Husband) and awarded Husband attorney's fees in the amount of $2,500. Because the trial court's basis for granting the motion to quash was erroneous and there is no alternative basis for affirming, we reverse its ruling as to both the motion to quash and the award of attorney's fees.

**Factual and Procedural Background**

On July 2, 2010, the trial court issued its judgment dissolving the marriage between Husband and Wife. In its judgment, the court denied Wife's request for maintenance on the

basis that Wife was "capable of supporting herself through . . . employment." In its recitals, the court stated: "[Wife] should not be awarded maintenance as she is not entitled to same and . . . [Husband] will receive and be credited with the maintenance he has paid to [Wife] during the pendency of this action."[1] In the decretal portion of the judgment, the court ordered "[t]hat Judgment is granted in favor of [Wife] and against [Husband] in the sum of $63,807 and execution on said Judgment shall be stayed for 60 days." The $63,807 figure was reached by combining a $36,307 equalization payment with a $27,500 payment compensating Wife for her share of marital property used by Husband.

Wife appealed the judgment to this court, arguing—among other things—that the court erred in not awarding her maintenance. We rejected Wife's claim and affirmed the dissolution judgment in a per curiam order with an accompanying memorandum. *Noble v. Noble*, 362 S.W.3d 70 (Mo. App. W.D. 2012).

On February 7, 2013, Wife issued a demand letter to Husband, seeking payment of the $63,807 judgment, less $6,699.54 that Husband had paid on the home mortgage after the dissolution, which the parties agreed would operate as a credit against the judgment amount. Wife's demand also sought interest on the remaining balance of $57,107.46 in the amount of $14.08 per day (the equivalent of 9 percent per annum on $57,107.46) beginning July 2, 2010.[2]

---

[1] During the dissolution proceeding, Wife sought an order for temporary maintenance. The court granted Wife's request and ordered Husband to pay $2,000 per month to Wife through the date of trial. Two months before trial, Husband filed a motion to terminate or modify the temporary maintenance order on the ground that Wife had secured employment and no longer required temporary maintenance to support herself. Wife opposed the motion and noted that trial was only sixty days away. In its order on the motion, the court first noted that Husband had already paid "any and all maintenance due until the currently scheduled trial date." The court then reasoned that, because the temporary support was "paid through the trial date, the Court [would] leave it in place to be taken with the trial of the case as to future support."

Husband claims—and Wife does not dispute—that he paid a total of $46,000 in pre-trial maintenance.

[2] Wife sought additional amounts thought to be owing on the judgment that do not appear to be at issue in this appeal.

Husband refused Wife's demand, arguing that the judgment provided him with a credit for the $46,000 he had paid in pre-trial maintenance and that he had already paid the balance remaining from the $63,807 amount after factoring in the mortgage payment and pre-trial maintenance credits.[3]

As a result of the dispute, Wife filed a "Motion to Determine Amount Due Under the Court's 'Judgment for Dissolution of Marriage,' to Enforce Payment of Said Amount, and for Attorney's Fees." Wife laid out the dispute regarding the amount due under the judgment and suggested that Husband's assertion that he was entitled to a credit for pre-trial maintenance was inaccurate because the judgment denied Husband's motion to terminate or modify temporary pre-trial maintenance. Wife relied upon an email from the trial court to the attorneys before the dissolution judgment was entered, wherein the court outlined the anticipated judgment and stated: "No return of any pretrial Maintenance." Wife also argued that if the court had intended to award Husband a credit, it would have done so in the decretal portion of the judgment, which it did not do.

Husband responded to Wife's motion, arguing that Wife's motion was nothing more than an attempt to modify the dissolution judgment denying maintenance to Wife. Husband argued that the court's determination that Wife was not entitled to *any* maintenance was directed at both pre-trial and future maintenance. Based upon this interpretation, coupled with Wife's challenge on appeal to the denial of maintenance, Husband argued that this issue had been finally settled.

---

[3] Wife acknowledges that, on February 28, 2013, in response to her demand, Husband tendered a check for $9,642.17, purportedly in full satisfaction of the judgment. It appears that Husband believed he was entitled to a greater mortgage payment credit than Wife asserted, as the payment tendered is less than the balance remaining after $46,000 is subtracted from $57,107.46.

The court held a hearing on Wife's motion, and at that hearing, Husband argued that the court lacked jurisdiction to rule on Wife's motion.[4] Husband's theory was that ruling on Wife's motion would constitute an "advisory opinion," which the court was not permitted to make. Though not clear from the record, it seems that the basis for Husband's argument was that Wife had not sought execution on the judgment at the time she filed her Motion to Determine and, therefore, any ruling by the court on the motion would be premature.

Apparently in response, following the hearing, Wife filed eighteen writs of execution and two motions for charging orders, seeking to garnish Husband's wages and other property in the hands of various business entities she believed him to be involved with. Each of the garnishments claimed an unpaid amount due of $63,807. The record does not reflect any ruling by the trial court on the motions for charging orders. Of the eighteen garnishments filed, only one was purportedly served; the remaining seventeen were either returned non-est or withdrawn. As to the single garnishment served, the registered agent filed an answer to the accompanying interrogatories indicating that it could "find no record of the entity being listed with the state authority."

After the writs of execution were issued, eight of the garnishees[5] jointly filed a "Petition to Stay, Quash or Hold in Abeyance [Wife's] Requests for Execution or Garnishments . . . Pending the Court's Ruling on [Wife's] Motion to Determine Amount Due Under the Court's 'Judgment for Dissolution of Marriage,' to Enforce Payment of Said Amount, and for Attorney's Fees."[6] Garnishees argued that there could be no execution because the underlying judgment

---

[4] According to the parties, there was a recording error at this hearing, and therefore no transcript is available. The only information available to us regarding the content of this hearing is through the docket entry and various suggestions and summaries by the parties at subsequent proceedings.

[5] ARN, LLC; ARN II, LLC; BankCard Central, Inc.; BCC Merchant Solutions, Inc.; mIQro Money, LLC; Royal Main Partners, LP; Silver Stream Marketing, LLC; and Web Enabled Billing, LLC.

[6] This motion challenged only nine of the 18 garnishments.

4

was uncertain, as evidenced by Wife's pending Motion to Determine. Garnishees further argued that Wife improperly sought property interests that could be obtained only through charging orders and not garnishment proceedings, and Wife's motions for charging orders had not yet been ruled.[7]

Husband then filed a "Motion to Stay, Quash or Hold in Abeyance [Wife's] Requests for Execution or Garnishments . . . for Failure [to] State and not Based on the Actual Amount of any Judgment or Sum Owed [Wife] by [Husband] *and for Attorney's Fees*." (Emphasis in original.) Husband challenged eleven of the writs of garnishment, arguing that the underlying judgment had already been satisfied.[8] Unlike Garnishees, Husband argued that

> the Court's decision as to the Dissolution of Marriage [wa]s *quite clear and certain* and that he owe[d] [Wife] $9,642.17 which represent[ed] the Court's award of $63,807.00 less the credit awarded [Husband] for temporary maintenance paid [Wife] of $46,000.00 and the post dissolution house payments he made at [Wife's] request of $8,193.83.[9]

(Emphasis added.) Husband further argued that the division of assets, itself, supported his claim that he was entitled to a credit for pre-trial maintenance; he claimed that the credit was necessary

---

[7] We question whether Garnishees had standing to file a motion to quash in the first instance, given that eight of the nine garnishments challenged were returned non-est, and the ninth garnishment, though served, was apparently directed to a non-registered entity. In light of these circumstances, no property in the hands of Garnishees had been attached or levied upon. Thus, it appears that Garnishees had no concrete interest in the proceedings at that point. Absent some demonstration that Garnishees were aggrieved by the attempted garnishments, it seems that they lacked standing to challenge them. *See Moxness v. Hart*, 131 S.W.3d 441, 446 (Mo. App. W.D. 2004) (finding that judgment creditor lacked standing to challenge sufficiency of notice provided to judgment debtors by intervenors in garnishment action); *Rusk v. Rusk*, 859 S.W.2d 751, 754 (Mo. App. E.D. 1993) (finding that garnishee was unable to raise issue that did not result in prejudice to garnishee).

Generally, "the criteria for standing is whether the [party] has a legally protectable interest at stake." *Phillips v. Mo. Dep't of Soc. Servs. Child Support Enforcement Div.*, 723 S.W.2d 2, 4 (Mo. banc 1987). "'A legally protect[a]ble interest contemplates a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief, immediate or prospective.'" *Id.* (quoting *Absher v. Cooper*, 495 S.W.2d 696, 698 (Mo. App. 1973)). Absent an attachment or levy upon property in the hands of a garnishee, it is difficult to discern what interest—if any—the garnishee has in the proceeding.

[8] Again, as with Garnishees, it is unclear why Husband chose to challenge only eleven of the eighteen writs.

[9] Husband's mathematical calculation appears to be off by $29, as the net amount remaining from the $63,807 figure less the claimed credits actually equals $9,613.17.

5

to equalize the marital assets. Husband also inexplicably claimed that "the debt for which [Wife] has obtained Writs of Garnishment is actively in dispute and *not certain*."[10] (Emphasis added.)

Thereafter, the court held a hearing on Garnishees' Petition and Husband's Motion to Quash. As part of the hearing, Wife also sought a ruling on her Motion to Determine the amount due under the judgment of dissolution. Wife presented six exhibits: the dissolution judgment, a copy of § 408.040,[11] Wife's calculation of the amount then owed with interest, specific pages of the dissolution judgment, an email from the court to the parties regarding the drafting of the dissolution judgment,[12] and a table reflecting the division of assets from the dissolution. Husband objected to the email exhibit, arguing that it constituted hearsay and improper parol evidence. Wife alternatively argued that the court could take judicial notice, as the email was sent from the court to the parties. The court did not rule on Husband's objection. Both Husband and Garnishees offered argument, and Garnishees requested an award of attorney's fees in the amount of $2,500.

Throughout the hearing, the court repeatedly expressed concern over the clarity of the judgment and a reluctance to interpret the judgment in order to clarify. The court stated: "You're asking me to tell you what [the judgment] means and I don't believe I have the authority to do that." The court further indicated: "I think that the judgment is vague. I think that I can interpret it either way and be upheld on the—at the Court of Appeals except that I don't have the authority to do that . . . ." The court then issued its judgment, purportedly sustaining Husband's

---

[10] In a later filing, Husband asserted that the judgment, "while certain[,] is not certain in the amount argued by [Wife]."

[11] All statutory references are to the Revised Statutes of Missouri (2000), as updated, unless otherwise noted.

[12] The judge drafting the email, the judge issuing the dissolution judgment, and the judge hearing these motions were one and the same.

motion and Garnishees' motion,[13] quashing the executions, assessing costs to Wife, and granting a judgment to Husband for attorney's fees in the amount of $2,500. The court's judgment did not address either the Motion to Determine the amount due under the judgment of dissolution, the motions for charging orders, or Wife's request for a supersedeas bond. Wife appeals.

**Analysis**

Wife brings seven points on appeal. She argues that the court erred in: (1) granting both Garnishees' Petition to Quash and Husband's Motion to Quash due to uncertainty of the judgment; (2) refusing to rule on Wife's Motion to Determine Amount Due; (3) granting the requests to quash due to the alleged impropriety of using the garnishment procedure; (4) granting the requests to quash Wife's motions seeking charging orders; (5) awarding attorney's fees without a legal basis for doing so; (6) awarding attorney's fees without a factual basis for doing so; and (7) failing to order Husband to post a supersedeas bond pending a stay. Because the trial court did not identify the basis for its refusal to address Wife's Motion to Determine, nor rule on the motions for charging orders, nor address the request for supersedeas bond or grant a stay, we have nothing to review as to those issues (Points II, IV, VII). Thus, our review will be confined to only those issues addressed by the trial court: the requests to quash the garnishments and the award of attorney's fees to Husband.

**A. Mootness**

"'A threshold question in any appellate review of a controversy is the mootness of the controversy.'" *State ex rel. Praxair, Inc. v. Pub. Serv. Comm'n*, 328 S.W.3d 329, 333-34 (Mo.

---

[13] The court did not provide any further specificity to the motions/pleadings it was sustaining. The record reflects only one motion filed by Husband—the Motion to Quash—and only a Petition filed by Garnishees, seeking the same relief. The record does not reflect any motions filed by Garnishees. Presumably, the court's judgment responded to Husband's Motion to Quash and Garnishees' Petition to do the same. Additionally, despite the fact that neither Husband nor Garnishees challenged all of the writs of execution, the court purportedly quashed all executions "filed in this case." At the time the court issued its judgment, only eight writs were still active insofar as their return dates had not yet expired. None of the eight, however, had been served, as all were returned non-est.

App. W.D. 2010) (quoting *Mo. Pub. Serv. Comm'n v. Mo. Interstate Gas, LLC*, 266 S.W.3d 881, 885 (Mo. App. W.D. 2008)). "Whether a case is moot is a legal question that the appellate court raises *sua sponte* on appeal." *C.I.A. v. T.E.*, 423 S.W.3d 844, 845 (Mo. App. W.D. 2014). "'A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy.'" *Id.* (quoting *Hail v. Hail*, 380 S.W.3d 655, 656 (Mo. App. W.D. 2012)). "When the subject matter challenged on appeal has expired, any appeal of that subject is moot because its review will have no practical effect." *Floyd v. Dep't of Mental Health*, 2014 WL 5462028, *2 (Mo. App. W.D. 2014).

Here, the subjects of the appeal—the eighteen garnishments sought by Wife—have either expired, been released, or been withdrawn.[14] Thus, our judgment would have no practical effect upon the garnishments issued below.

Though, "[g]enerally, an appellate court does not decide moot issues," *C.I.A.*, 423 S.W.3d at 845, "Missouri courts recognize two exceptions to the general rule under which this court may exercise its discretion to hear the appeal and reach the merits of a moot case." *Floyd*, 2014 WL 5462028, at *3. "First, we may consider the appeal if the case becomes moot *after* it has been argued and submitted." *TCF, LLC v. City of St. Louis*, 402 S.W.3d 176, 181 (Mo. App. E.D. 2013) (emphasis added). "Second, we may consider the appeal if the case presents 'an unsettled legal issue of public interest and importance of a recurring nature that will escape

---

[14] Eight of the eighteen garnishments expired before the hearing on Husband's and Garnishees' requests for quashing and, thus, carried no legal significance. *See Fulkerson v. Laird*, 421 S.W.2d 523, 527 (Mo. App. 1967) (holding that, once the return date of a writ of execution or garnishment has expired, the writ becomes *functus officio* (i.e., without further authority or legal competence), "and all subsequent proceedings under it [a]re null and void."). Of the remaining ten, two were withdrawn after the hearing (though they, too, had expired by the time of the hearing). The remaining eight garnishments, though still live at the time of both the hearing and the judgment, had not yet been served; thus, no property had yet been attached or levied upon. These eight garnishments were set to expire on April 28, 2014. Six of these eight were released on April 28, 2014. The remaining two were released on November 19, 2014. Thus, none of the original eighteen garnishments are currently viable, and there remains no controversy before us as to the garnishments themselves.

8

review unless the court exercises its discretionary jurisdiction.'" *Id.* (quoting *State ex rel. Chastain v. City of Kansas City*, 968 S.W.2d 232, 237 (Mo. App. W.D. 1998)). We construe the "public-interest" exception very narrowly. *Id.* "'[I]f an issue of public importance in a moot case is likely to be present in a future live controversy practically capable of appellate review, then the "public-interest" exception does not apply.'" *Id.* (quoting *City of Manchester v. Ryan*, 180 S.W.3d 19, 22 (Mo. App. E.D. 2005)).

Here, we exercise our discretion to review the matter under the public-interest exception because the issue presented here—the effect of an allegedly uncertain underlying judgment on garnishments sought in aid of executing on that judgment—is likely to recur but continually escape review due to the limited window of garnishment viability. In cases such as this one, where a party prevails on a motion to quash an execution that has not yet been served, on the theory that the underlying judgment is unenforceable, the losing party whose execution has been quashed has no ability to challenge the court's ruling on enforceability of the underlying judgment before the garnishments expire by the passage of time. Thus, the public-interest exception applies and we will review Wife's claim on the merits.

## B. Quashing the executions

Wife advances three arguments as to why the court improperly quashed the executions. She argues that the court erroneously determined the dissolution judgment to be uncertain, the garnishments to be improper, and the charging orders to be improper. The judgment, however, does not specify the court's reasoning.[15] "[O]ur review is ordinarily limited to the written judgment and does not extend to oral comments made by the trial court, which are not part of the judgment." *Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 826 (Mo. App. W.D. 2012). Such comments, however, "may be considered . . . as an explanation of the order or judgment." *In re*

---

[15] Neither party requested findings of fact or conclusions of law. *See* Rule 73.01(c).

9

*Fulton*, 863 S.W.2d 931, 933 (Mo. App. W.D. 1993). Where a judgment is "ambiguous, uncertain, or incomplete, an appellate court may properly look . . . to the contemporaneous oral statement of the judge, [insofar] as the same may throw light upon the view the court took of the case during its progress and at the time of its [judgment]." *Ponyard v. Drexel*, 205 S.W.2d 267, 270 (Mo. App. 1947).

Here, the court repeatedly expressed concern over the clarity of the dissolution judgment, as well as the court's ability to interpret that judgment. The court questioned counsel: "What tells us what the amount is though?" And the court directly stated: "Apparently, it's not clear" and "I think that the judgment is vague." The court also expressed its belief that it lacked authority to interpret the dissolution judgment it rendered—that interpretation of judgments was a matter solely for the Court of Appeals: "I do feel like I'm sitting as the Court of Appeals here and I don't think that's very proper"; "You're asking me to tell you what that means and I don't believe I have the authority to do that"; "I think you're coming to me today and saying, 'Okay. Here's your judgment. What's it mean?' . . . I think that I can interpret it either way . . . except that I don't have the authority to do that."

From the court's oral statements, we believe that its decision to quash the executions was based upon its belief that the dissolution judgment was uncertain and therefore unenforceable. "We will affirm the [trial] court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Querry v. Querry*, 382 S.W.3d 922, 925-26 (Mo. App. W.D. 2012). "If[, however,] the motion to quash a garnishment is based on the alleged invalidity of a judgment, we exercise *de novo* review." *State ex rel. Koster v. Cain*, 383 S.W.3d 105, 111 (Mo. App. W.D. 2012).

"Garnishment is in aid of an execution and is merely 'an ancillary remedy to obtain payment of the judgment.'" *Fulkerson v. Laird*, 421 S.W.2d 523, 526 (Mo. App. 1967) (quoting *Harrison v. Harrison*, 339 S.W.2d 509, 517 (Mo. App. 1960)). "A valid judgment and a valid execution are indispensable prerequisites to a valid garnishment." *Id.* (citing *Flynn v. Janssen*, 284 S.W.2d 421, 422 (Mo. 1955)). "A motion to quash a garnishment for alleged invalidity of the judgment, however, is a collateral attack on the judgment and will lie only where the record affirmatively discloses that the judgment is void." *Cloyd v. Cloyd*, 564 S.W.2d 337, 342 (Mo. App. 1978). "[S]uch a finding will not be lightly made." *Id.*

"To be enforceable by execution, a money judgment must specify with certainty the amount for which it is rendered, or if the amount is not stated, it must be ascertainable from the record." *Schneidler v. Feeder's Grain and Supp., Inc.*, 24 S.W.3d 739, 741 (Mo. App. E.D. 2000). If, however, "a judgment lacks pristine specificity, but it can be made certain by a motion and hearing to determine the exact amounts due by ministerial computation or evidence, the judgment upon being reduced to certainty, is sufficiently certain and definite so as to be enforceable." *Id.*; *see also Telge v. Telge*, 677 S.W.2d 403, 407 (Mo. App. W.D. 1984) (holding that an indefinite or uncertain judgment is not thereby void and unenforceable; rather, "[i]f execution cannot issue from the judgment, then the court upon motion can determine the exact amount due under the decree.").

Both Husband and Wife agreed that the dissolution judgment was certain.[16] Where they disagreed, however, was the actual amount due. According to both of their interpretations, Wife

---

[16] Garnishees argued that the judgment was unenforceable because the amount due was uncertain. Garnishees relied upon cases holding that *contingent* judgments were uncertain and therefore unenforceable. This is an argument that Husband sought to adopt through his suggestions and motions, apparently not recognizing the inconsistency presented by his statements to the contrary. Nevertheless, neither Garnishees nor Husband have pointed to any aspect of the dissolution judgment rendering it contingent. There is plainly no contingency present. Wife was awarded $63,807. She agreed to a home mortgage payment credit. The judgment either provided

11

obtained a judgment against Husband in the amount of $63,807. Husband and Wife further agreed that Husband was entitled to a credit for post-judgment home-mortgage payments he made, though the amount of that credit appears to be in dispute. Their interpretations diverge as to whether Husband was also entitled to a credit for the pre-trial maintenance payments he made to Wife. This dispute, however, does not render the judgment uncertain. The trial court merely needed to interpret the meaning of its recital that "[Husband] will receive and be credited with the maintenance he has paid to [Wife] during the pendency of this action." Regardless of which party's interpretation is correct, the amount due is readily ascertainable through evidence of payments made and simple calculations.[17]

That being said, there are several reasons why we agree with Wife's interpretation of the judgment, i.e., that Husband is *not* entitled to a credit for pre-trial maintenance paid. First, nothing in the record suggests that Husband ever sought the return of *all* pre-trial maintenance. Husband's motion to terminate or modify pre-trial maintenance would support, at most, the return of two months of payments, as it was not until two months before trial that he sought termination.

_____

Husband with a pre-trial maintenance credit or it didn't. Either way, a simple calculation can dictate the current amount due.

[17] As to the propriety of the trial court interpreting its own judgment, it is unclear to us why the court believed it was unable to undertake this function in the context of a garnishment proceeding. The parties were asking the court to enforce its judgment by execution and in the process to interpret its own judgment and identify its own intent. Though this court frequently interprets judgments, it is not within our exclusive province to do so, and, when doing so, our primary concern is *the intent of the trial court*. *See Janes v. Janes*, 242 S.W.3d 744, 748 (Mo. App. W.D. 2007) (holding that, "if the decree conveys more than one meaning such that a reasonable person may fairly and honestly differ in the construction of the terms, then the language is ambiguous, and the appellate court must ascertain the intent of the trial court in entering the order." (internal citations and quotations omitted)). And where, as here, the judge issuing the judgment is the same as the judge being asked to enforce it by execution, we fail to see why, in the process of enforcing the judgment, the trial judge cannot interpret it. We note, that the ability to interpret ambiguous judgments does not imply the ability to amend when the trial court has lost jurisdiction. It appears that in this case the confusion may have been caused by Wife's filing of a motion to determine the amount due under the judgment before the filing of garnishments. It is questionable whether the trial court would have had the authority to rule that motion standing alone. Once the garnishments were filed, however, the court had the authority to interpret the judgment as part of the garnishment proceedings. This is not because the previous motion became "ripe" as a result of the filing of the garnishments, as suggested by Wife; rather, when a party seeks to enforce a judgment by execution, the court has the authority to interpret its previous judgment, if necessary.

Second, apart from the one sentence in the recitals portion of the judgment referring to Husband being "credited" for the pre-trial maintenance paid, there is absolutely nothing within the four corners of the judgment reflecting an intent to provide Husband with a credit. The decretal portion of the judgment awards no such credit and it places no limitations upon the monetary judgment awarded to Wife. "When a conflict exists within the text of a court order, the portion of the order wherein the court gives its imprimatur or exercises its power trumps inconsistent language appearing elsewhere in the order." *Jacobs v. Georgiou*, 922 S.W.2d 765, 770 (Mo. App. E.D. 1996); *see also Casper v. Lee*, 245 S.W.2d 132, 141 (Mo. banc 1952) ("[I]f there is an inconsistency between the recitals and the decretal part of a judgment, an express adjudication controls mere recitals."). Furthermore, the judgment already reflects an equalization payment; thus, an additional credit for pre-trial maintenance cannot have been intended to equalize the overall division, as Husband argues.

Finally, to the extent that the "be credited" language renders the judgment ambiguous, we would resort to parol evidence like the email the court sent to the parties advising them how to draft the dissolution judgment, in order to discern the court's intent. *See Dover v. Dover*, 930 S.W.2d 491, 495 (Mo. App. W.D. 1996) ("The general rules of construction for written instruments are used to construe court judgments."); *Rouner v. Wise*, 446 S.W.3d 242, 258 (Mo. banc 2014) ("Extrinsic evidence may be admitted to explain and resolve ambiguous . . . terms"). And that email expressly stated: "No return of any pretrial Maintenance."

In short, the dissolution judgment is not uncertain and is capable of being enforced in a garnishment proceeding. Thus, to the extent that uncertainty of the judgment was the basis for the court's decision to quash the executions, it erroneously applied the law.[18]

---

[18] Additionally, even if Wife were seeking to garnish more than she was entitled to, the remedy would not be to quash the executions in their entirety; the appropriate remedy would be to quash only that portion of the

Nevertheless "our 'primary concern is the correctness of the trial court result, not the route taken to reach it.'" *Sparks v. Sparks*, 417 S.W.3d 269, 280 (Mo. App. W.D. 2013) (quoting *In re Riverside-Quindaro Bend Levee Dist. v. Mo. Am. Water Co.*, 117 S.W.3d 140, 146 (Mo. App. W.D. 2003)). "Therefore, '[n]otwithstanding the fact that the trial court's judgment contains wrong or insufficient proffered reasons, if the correct result was reached, the appellate court must affirm.'" *Id.* (quoting *Riverside-Quindaro*, 117 S.W.3d at 146). Accordingly, we now address Husband's and Garnishees' alternative reason for quashing, as well as any other basis supported by the record.

Husband and Garnishees argued that the garnishments were improper on their face insofar as they sought to garnish property not legally subject to garnishment, specifically Husband's partnership interests and stock shares in the various business entities. While it is true that "partnership funds . . . are not subject to garnishment for the individual debts of one of the partners," *Hallmark v. Haenni*, 947 S.W.2d 452, 455 (Mo. App. E.D. 1997), the garnishments challenged did not seek *partnership* funds. Rather, the eight garnishments that were viable at the time of the hearing sought Husband's "wages, salaries, expenses or any and all other monies due and owing to judgment debtor." These items were plainly subject to garnishment. *See* Rule 90.01(d)[19] ("'Property subject to garnishment' is all goods, personal property, money, credits, bonds, bills, notes, checks, choses in action, or other effects of debtor and all debts owed

_____

executions that exceeds the amount due. *Pflanz v. Pflanz*, 177 S.W.2d 631, 636 (Mo. App. 1944) ("a judgment debtor is not entitled to have an execution wholly quashed and be thereby entirely relieved of the levy on his property under the execution and garnishment merely because of a variance in the amount of the judgment due and the amount stated in the execution at the time of the issuance thereof." Rather, "an execution issued for an amount in excess of the amount due on a judgment should be quashed to the extent of the excess, and permitted to stand . . . as to the amount shown to be accrued and unpaid at the time of the issuance of the execution.").

[19] All rule references are to the Missouri Supreme Court Rules (2013), unless otherwise noted.

to debtor.").[20] Thus, we reject Husband's and Garnishees' alternative basis for quashing the executions.[21]

Because the court erred in determining that the dissolution judgment was unenforceable, and because the record reveals no alternative ground for quashing the executions, the court's judgment is reversed.[22] Because the amount due on the dissolution judgment is ascertainable but not yet clear from the record, "we are not in a position to direct the trial court with respect to that amount." *Hardin v. Hardin*, 512 S.W.2d 851, 856 (Mo. App. 1974) (quoting *Hedgecorth v. Hedgecorth*, 463 S.W.2d 596, 599 (Mo. App. 1971)). Thus, on remand, should Wife seek new writs of execution, "it is incumbent on the court to judicially determine, as near as may be, the amount due, and to quash the execution only so far as the amount seized thereunder exceeds such sum." *Id*. at 855.

---

[20] Though we need not address the garnishments that had expired by the time of the hearing, we note that the remaining challenged, but expired, garnishments also sought property legally subject to garnishment. One sought wages only, and another, which was issued to a limited liability company (LLC), sought "any and all shares of stock held by judgment debtor." Husband and Garnishees argue that, because LLCs do not issue stock, this garnishment was improper as well. Assuming the assertion is correct as to unavailability of stock in an LLC, we fail to see how this renders the garnishment improper, as opposed to merely ineffective. Seeking to levy upon nonexistent property is not the same as seeking to levy upon exempt property. The final challenged garnishment not only had expired but also had been withdrawn; thus, we see no reason to address it.

[21] The Southern District, in *Board of Regents of Southwest Missouri State University v. Harriman*, 792 S.W.2d 388, 394 (Mo. App. S.D. 1990), upheld an order quashing garnishments for lack of service. While, at first blush, this appears to provide an alternative basis for affirming under the facts in this case, given that none of the garnishments at issue had been served, we do not think a motion to quash an execution that has not been served but remains viable is appropriate. As discussed in *Squire's Shop, Inc. v. Boehlow*, 482 S.W.2d 738, 739 (Mo. App. 1972), "[t]he plaintiff has a statutory right to file interrogatories to the garnishee at the return term of the Writ," and "[t]he plaintiff may not be deprived of its rights of discovery by a prematurely sustained motion to quash." In *Squire's Shop*, the trial court sustained a motion to quash an execution before the passage of its return date. *Id*. The appellate court found that doing so "deprived [plaintiff] of its right to inquire into the garnishee's status as a debtor of the defendant." *Id*. We think the same reasoning applies in the notice context. Though Wife had not yet succeeded in serving Garnishees as of the hearing date, she had a statutory right to continue her pursuit of service up until the return date of the writs. Therefore, any motion to quash due to lack of notice would be premature and does not provide an alternative basis for affirming in this case.

[22] Though the garnishments at issue are no longer viable, Wife is not precluded from filing new garnishments on remand. "[F]ailure to obtain satisfaction of the judgment of the first writ of execution does not preclude subsequent attempts. A judgment plaintiff is not limited to an original execution, but may procure further writs to obtain satisfaction." *Fielder v. Fielder*, 671 S.W.2d 408, 410 (Mo. App. E.D. 1984).

### C. Awarding attorney's fees

We turn now to the propriety of the court's award of attorney's fees to Husband. Wife raises two arguments as to why the award of attorney's fees to Husband was improper. First, she argues that there was no authority for the award of attorney's fees to Husband. And second, she argues that there was insufficient support in the record for the award of attorney's fees. Finding her first claim dispositive, we do not address the second.

"Whether a trial court has authority to award attorneys' fees is a question of law which we review *de novo*." *St. Louis Title, LLC v. Talent Plus Consultants*, *LLC*, 414 S.W.3d 24, 26 (Mo. App. E.D. 2013). "Generally, Missouri courts follow the American Rule, which requires each litigant to bear the expense of his or her own attorneys' fees." *Midland Prop. Partners, LLC v. Watkins*, 416 S.W.3d 805, 817 (Mo. App. W.D. 2013). "Thus, not every successful litigant is entitled to an award of attorneys' fees." *Id*. "Rather, attorneys' fees are typically recoverable only 'when a statute specifically authorizes recovery or when attorneys' fees are provided for by contract.'" *Id*. (quoting *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 657 (Mo. banc 2009)).

In the garnishment context, attorney's fees are addressed by both rule and statute. Rule 90.12 provides for an award of costs and attorney's fees to a *garnishee* under the following circumstances: (a) if the garnishee files interrogatory answers that are neither excepted to nor denied by the garnishor; or (b) "if the garnishor files exceptions to the garnishee's interrogatory answers but does not obtain a judgment against the garnishee." By statute, "[i]f any plaintiff in attachment shall cause any person to be summoned as garnishee, and shall fail to recover judgment against such garnishee, all the costs attending such garnishment shall be adjudged against such plaintiff, and the court shall render judgment in favor of such *garnishee*" for various

16

costs, including attorney's fees. § 525.240 (emphasis added). Though there is authority for awarding attorney's fees to a *garnishee*, we have found no authority providing for attorney's fees to the *judgment debtor* (here, Husband) in the garnishment context, and Husband has provided none. Here, the judgment awards attorney's fees to the "Petitioner," which in this case is Husband, the judgment debtor. For this reason, alone, the court's award was in error and must be reversed.

We suspect that the court's award of fees to Husband was an inadvertent error, given the fact that it was Garnishees, rather than Husband, that requested attorney's fees in the specific amount awarded by the court. Even assuming this to be the case, however, reversal is still required because Garnishees were not entitled to attorney's fees either.

First, none of the preconditions provided in Rule 90.12 for an award of attorney's fees to a garnishee have been met in this case. There was but one answer filed in response to the eighteen garnishments, and that answer was in response to an expired garnishment and, therefore, without any legal effect. Because there were no answers, there could have been no exceptions or denials. Thus, there was no basis for awarding attorney's fees under the rule.

Second, though the statute appears to be broader in scope, it too failed to provide sufficient authority for the award of attorney's fees to Garnishees. "'It is the duty of a garnishee to stand neutral in the litigation over the fund in his hands, to disclose all the information it has concerning the fund to the court, and to hold the fund in readiness to abide by the decision of the court.'" *Bd. of Regents for Southwest Mo. State Univ. v. Harriman*, 857 S.W.2d 445, 451 (Mo. App. S.D. 1993) (quoting *Potter v. Whitten*, 155 S.W. 80, 88 (Mo. App. 1913)). "'[B]ut when the garnishee . . . abandons his position as stakeholder and takes up the role of a litigant . . . he must be content to accept the outcome of the battle fought out on the field he has chosen.'" *Id*.

17

(quoting *Potter*, 155 S.W. at 88). "Section 525.240 and Rule 90.12(b) . . . do not award the garnishee costs when a garnishee abandons its neutrality and goes beyond costs normally attending such garnishment." *Capital One Bank v. Edison Credit Union*, 299 S.W.3d 662, 667 (Mo. App. W.D. 2009). Thus, where a garnishee engages in conduct beyond mere attendance, such as claiming exemptions for the debtor, contesting denials of its answer, and denying the jurisdiction of the court, the "garnishee can no longer be classified as a mere stakeholder but becomes a litigant" and is no longer entitled to attorney's fees, costs and expenses, even if his position prevails. *Id*. at 668 (quoting *Ferneau v. Armour & Co.*, 303 S.W.2d 161, 169 (Mo. App. 1957)). Where "'[a]ll the trouble and expense [garnishee] suffered in this proceeding were due to his resistance of [garnishor's] demand, . . . [garnishee] and not [garnishor] must bear the loss.'" *Id*. (quoting *Ferneau*, 303 S.W.2d at 169).

Here, Garnishees plainly assumed the role of litigant, given the fact that they challenged the enforceability of the dissolution judgment, attacked the form of the garnishments, and did so even though no property in their hands had been attached or levied upon. Consequently, even if the court's award was meant for Garnishees, rather than Husband, they were not entitled to attorney's fees.

In sum, because there is no authority for the court's award of attorney's fees either to Husband (the judgment debtor) or to Garnishees, the award must be reversed.

**Conclusion**

Though Wife's claims regarding the garnishments are moot, they are nevertheless subject to review under the public-interest exception. The court's order quashing the executions due to its belief that the dissolution judgment was uncertain and thereby unenforceable is reversed. The

18

court's award of attorney's fees lacked any authority; thus, it too is reversed. The matter is remanded for further proceedings consistent with this opinion.

_____
Karen King Mitchell, Judge

Anthony Rex Gabbert, Presiding Judge,
and Joseph M. Ellis, Judge, concur.